We are ready to hear from you. Mid-Continent Casualty v. Greater Midwest Builders. Thank you, Your Honor. I'm Bob Fitzpatrick, representing Mid-Continent Casualty today. Can you up the power on the speaker a little bit? You'll need to speak up. These digital layers are not perfect. Thank you, Counsel. Certainly, Your Honor. This appeal today involves four core issues regarding an aspect of a deductible endorsement in policies issued by Mid-Continent Casualty Company to Greater Midwest Builders. The deductible endorsement has a settlement prong which allows Mid-Continent to advance deductibles in settlement of a claim or a suit and to be reimbursed by the named insured. The four issues that result in this appeal, we believe, are four fundamental errors of contract interpretation. First, despite the fact that the term suit as used in the settlement prong of the deductible endorsement is broadly defined and the district court found that the term suit required that the suit in question be against the named insured Greater Midwest for the settlement prong of the deductible endorsement to apply. Then the court determined that the garnishment claim in the coverage litigation, which was determining whether the negligence of Greater Midwest was a covered loss, determined that the garnishment claim was not a suit as that term is broadly defined in the policy. The court then made the quasi-factual determination that Greater Midwest had already settled its own liability for the Kansas judgment which gave rise to the coverage litigation, despite the fact that the settlement of the coverage litigation extinguished that liability in and of itself. By the satisfaction of judgment, that's what you rely on at that point? Yes, the satisfaction of judgment which is evident from both the Kansas litigation docket and the coverage litigation docket. The court came to the ultimate conclusion that by settling the garnishment claim in the coverage litigation, Mid-Continent was only settling its own liability. We believe that fundamentally misunderstands both the contract provisions at issue and the nature of a litigated insured claim. In all of this, there are so many layers of lawsuits here, both in state and federal court. Where at the end of the day do you think the district court thought you should assert your claim of deductibles? I think there's two issues there. The district court certainly thought that to reduce the judgment by the third party claimant, the homeowners association, that the deductible issue should have been raised at the time of the trial of the garnishment claim. In Missouri? In Missouri. When the district court was determining how many occurrences there were. Why doesn't that make sense? At that point, if your position was that you were only liable for the amount above the deductible, and you were being sued in Missouri in the garnishment proceeding, why isn't that time to assert that that is in fact the case? Why let that proceeding go to the end and then turn around and try to get deductibles from, in that instance, from the other party? Because there are, as I said, two issues. One is when was the time to assert that to reduce the potential judgment of the third party claimant? The settlement prong of the deductible endorsement operates against the named insured. And the question of whether the named insured should have paid deductibles was never addressed in that garnishment action, nor did it have to be. Because there was no claim in the separate judicial unit in the coverage litigation which made up the garnishment action. There was no claim between, I'm sorry, go ahead. No, nor did it have to be, and that's what I'm trying to get my mind around. It seems to me at that time, the homeowners association had received in the Kansas litigation the right to pursue a claim against you, your client. In the Kansas litigation, there was a judgment. There was a judgment, and part of that judgment was that they had a right to seek relief in the equitable action against you in Missouri, right? Well, that's not in the judgment. The judgment is for greater Midwest liability, and because there's an outstanding judgment, the Missouri garnishment statute then says you, third party claimant, that has a judgment can file a suit to see whether that judgment is covered by the property. Before the Kansas judgment, there was some agreement. Well, that's the point. Didn't that result come from a settlement? Didn't that judgment, wasn't that the product of a settlement by greater Midwest? It was the product of a trial. It was the product of a trial before a judge, who wasn't, I assume, made aware of the settlement. Evidence was presented to a judge, and a judge determined the liability. It was not a consent judgment based on the agreement. The agreement was just that there would be no more discovery, and no one was going to file summary judgment motions, but there was an actual trial in the Kansas litigation. The liability that was determined after that trial said that the homeowners were entitled to recover, right? The homeowners were entitled. I'm sorry. But they assigned their interest, right? The homeowners, there's an actual judgment in Kansas that says the homeowners are owed $7 million by greater Midwest. Right. And that judgment, that judicial act, is what the coverage litigation was based on. The coverage litigation was not based on whatever agreement may have been reached before the Kansas judgment. The coverage litigation is based on the Kansas judgment, which stayed in its existence throughout the coverage litigation. But the homeowners don't look to greater Midwest for that $7 million, right? Who knows? Well, no, no, no. You do know. They assigned, I thought, I could be wrong. This is a bit of a spaghetti here. But didn't they assign their interest, the homeowners, after that case came to judgment? Didn't they assign? They assigned interest in the bad faith claim, which was a separate judicial unit in the coverage litigation, which was not part of the garnishment claim. They, at most, the homeowners association said they would attempt to collect against insurance. And that's the point I'm getting at. The agreement at that point was not to look to greater Midwest. It was to look to the insurance company to get paid, right? Right. Okay, now they're in Missouri and they're filing a suit for equitable garnishment against the insurance company. I want to get paid. Well, why isn't it a natural time for the insurance company to say, well, I'll tell you what. If I owe you anything, the only thing I owe you is something beyond the deductible. Because that's where the two parts of the deductible endorsement come in. There's a coverage limitation part, an insurance policy coverage limitation part, which says we're only going to pay what's over the deductible. But the settlement prong is separate. And it has nothing to do with whether deductibles are included in the payment. The settlement prong allows the insurance company to advance deductibles. Well, yes, but the question that came up in the district court litigation that results in this appeal is whether that settlement prong was actually implicated by what you did in the Missouri litigation. And the question is whether there was any basis to trigger that settlement prong. Because the settlement prong operates against the named insurer and can't be waived by the Western Heritage Authority representative court. For the sake of argument, the Missouri court said you can't offset the third party's claimant's judgment, the homeowner's association's judgment, by raising this counterclaim at the time you did it. But that court never said you can't seek to collect those deductibles from the named insurer. Well, didn't you initially attempt to say that, though, in the Missouri garnishment case? That is, there are deductibles at issue here? You initially asserted that, and then somehow it went away. That was asserted against the homeowner's association. And the significant litigation after the coverage litigation judgment was all against the homeowner's association. The homeowner's association acknowledged that we weren't seeking relief at that time against Greater Midwest. There was no issue decided in that case as to whether the settlement prong of the deductible endorsement could be enforced against Greater Midwest. Well, it wouldn't necessarily be a question of you seeking relief from Greater Midwest. It would be a question of how much you would owe the homeowner's association. And that would be determined by being at the offset of deductible, right? How much you conceivably could owe them. If the court is asking me should the issue of how much deductible should have been credited against the homeowner's association's judgment, sure, there's an argument there. But until the court found that there were 8,000 occurrences, there was no basis to determine how much deductible should have been credited. But all of that goes towards whether the homeowner's association judgment could be reduced. And that's what was being litigated and still being litigated in the coverage action. Whether Mid-Continent would owe the homeowner's association that money was still being litigated when the coverage litigation was settled. It wasn't like there was this judgment sitting there that they just paid. There was an actual settlement. There were still appeals over the enforcement of the judgment in the coverage litigation. That was a settlement. That was a real settlement and it had real consequences. And it didn't just settle Mid-Continent's own liability. It reduced potential liability of the named insurer because you have this agreement sitting out there. But what happens if Mid-Continent goes and solves it? What happens if the homeowner's association says, well, there's an impossibility now. Well, but there's an agreement. That's the point. Mid-Continent had an agreement with the homeowner's association that the homeowner's association would not look to Mid-Continent for the money. And so one of the issues here, at least it seems to me, and correct me if I'm wrong, is simply the question of whether the settlement provision contemplates what you're trying to do here. In other words, whether it contemplates a situation in which you, in litigation with this third-party claimant, would then turn around and say, now I paid deductibles and I want to go get those deductibles from you. Well, in the district court, the district court, at the motion to dismiss stage, looked at an agreement and decided what it meant. The district court ignored the fact that there was a judgment in Kansas still pending against Greater Midwest. Whatever that agreement said, there's a judgment. And then it ignored the fact that that judgment wasn't released until the coverage litigation was settled. And the coverage litigation settlement said it was settling that judgment. What means more? That judgment? Or an agreement that we're not sure what would have happened had the coverage litigation not been settled? Litigated insurance claims are a continuum. From the negligence, to the claim, to the suit, to a judgment, to appeal, to collection. And at any point in time that case is settled, two things happen. The named insured's liability is reduced by the settlement, and the insurance company is living up to its contract obligation to, it's effectuated by the insuring agreement. That they pay what the insured becomes legally obligated to pay. If the agreement was what was the obligation, it's the judgment that's the obligation. They're paying because of that judgment. The agreement has nothing to do with Mid-Continent's obligation. He answered my question. All right. Thank you. Good morning. May it please the court, my name is Lisa Wexelman, and I am one of the attorneys for Mid-Continent Casualty. Yes, thank you very much. I'm sorry, I have a really soft voice, and I have allergies on top of it, so I'll do my best. We're here today because Mid-Continent was unsuccessful in the state court garnishment action in its efforts to reduce the judgment entered against it by amounts it claimed were within policy deductibles. By filing this action, Mid-Continent is attempting to go around the garnishment court judgment against it, a judgment it twice unsuccessfully appealed before it paid. It was only after MCC had exhausted its efforts to reduce the judgment before the Missouri courts that it entered into a settlement agreement with the Homeowners Association and it paid the judgment. A judgment that you said was within policy? It's my understanding it was. Okay. So, excuse me, when should the issue of deductibles, when should that have been raised in all of this iteration of various lawsuits? The issue of deductibles should have been raised in the garnishment action. The garnishment action, pursuant to Missouri statute, pursuant to the agreement of the parties, pursuant to the policies itself, was an action to collect the amounts owed by the insurance company under the policies. Or was it just an action to collect a judgment? And if the judgment is in question, that is, should it be reduced by deductibles, should the judgment, should that issue have been challenged prior to the Missouri garnishment? There was no litigation. Well, there was a declaratory judgment action that had been stayed in Kansas prior to the underlying action. And then at the time that the garnishment court went forward, Mick Plotman attempted to renew or revive that declaratory judgment action and have the two proceedings combined. The federal court in Kansas, who was hearing the declaratory judgment, dismissed the action at that point, determining that the garnishment court was the form necessarily best suited to decide all issues. Was there an appeal from that dismissal of the declaratory judgment? I believe so. There was an appeal? I believe so. Okay. To our court? I'm sorry. That would be the usual. Yes, I believe that the case went up on appeal to the 10th Circuit. And what did we do with it? And it was summarily disposed of. Okay. I could be wrong on that one. Well, we'll check. There's just a lot of... There's a lot of cases back and forth and I apologize for that. A lot of things going on. A lot of things going on in this case. What I do know is that that case was dismissed and the case proceeded before the garnishment court. My point in all of this is the garnishment statute that was utilized here is a specific statute in Missouri which gives the claimant, the judgment holder, an affirmative cause of action directly against the insurance company. And it gives them the right to pursue the insurance company for the amounts owed by the insurance company under its policies of insurance. So therefore... So it's not in the world of Kansas versus Missouri, which is always a fun thing to talk about. It's not the same kind of animal as we see in Kansas garnishment. You're saying in Missouri you just basically open the whole thing up and try to determine what is really owed. It's not really a pure enforcement of a judgment. Missouri actually has two different forms of garnishment. Right. We have rule 90 garnishment, which is basically the standard garnishment. But the equitable garnishment, which is by Missouri statute, if you look at the literal wording of the statute, gives the right to the judgment holder to proceed against the insurance company for the amount that is owed under the policies. And that's where we are? That's the pocket we're in? Is this equitable garnishment? Is that where we are in Missouri? I believe so, yes. I'm sorry, Your Honor. I misunderstood your question. This is specifically an equitable garnishment suit? Equitable garnishment, yes. And the amount they owe under the policy, does that mean the amount they owe minus the deductible? Yes. Well, if that's the case, then why would deductibles be an issue in the equitable garnishment? Because the policy entitled the plaintiff, the homeowner's association, to collect amounts owed in excess of the deductible. So it necessarily was either a matter of affirmative defense or a matter of the plaintiff's burden of proof in that garnishment action. Amount in excess of the deductible because the judgment itself encompassed an amount in excess of the deductible. I don't know that. I don't know that. I was not involved in the underlying litigation. What I'm saying is the homeowner's association... I mean, that's an important fact, isn't it? The homeowner's association... I'm sorry. What was the judgment that came out of the Kansas litigation? The judgment that came out of the Kansas litigation was for property damages in a specified amount. And it was an amount like $7 million, right? Yes. And is that an amount that would have encompassed both what the liability is of the insurer minus the deductible plus the deductible? If you're asking me had the insurance company simply paid the judgment, at that point in time, they would have paid, I think, amounts in excess of the deductible. Okay. So if they had paid the $7 million, they would have paid both what they owe as their policy limits and the deductible. No. Okay. So the $7 million did not encompass their policy limits and the deductible. I don't know the answer to that question. Well, the answer to that question is pretty important. Because what happens is if it goes to Missouri and you have a $7 million judgment, and if that judgment exceeds the amount of the policy limits, the conceivable liability of the insurer... in other words, includes an amount that includes the deductibles, then it becomes fairly clear that the deductibles would be a part of that equitable garnishment. Because it would be the insurance company's interest to assert, and they did assert it for a while, the question of the deductibles. Because they'd say, well, I only have to pay the policy limits. I don't have to pay that. So that's the question. Okay. And, Your Honor, I totally agree with what you just said. Basically, what I was trying to articulate is a distinction that there were no actual determinations made in the underlying court as to what portions of the judgment covered property damage in excess of deductibles. Certainly... But is it conceivable that in my underlying court you're talking about Missouri now? No, I was talking about the trial court and the damage action. Okay. In this action, the one that leads to this appeal. Or what action are you talking about? I'm talking about the underlying property damage case. In Kansas? In Kansas. The $7 million judgment. Yes. Okay. So in the $7 million case, there was no calculation as to what part was deductible, what part was possible. But, I mean, you could do simple math and say, right, this is the absolute amount that you could pay policy limits on this claim. So anything above that amount has got to include the deductibles, right? Yes. Okay. Well, is that figure $7 million or that I just mentioned? Let's try again. Policy limits, deductibles. Does that go in excess of $7 million? In this action, the entire judgment was $7 million. So theoretically, if there was a deductible due and owing on the judgment, it would be within the $7 million. Okay. Well, if it's within the $7 million, they take that, they go and they do an equitable garnishment in Missouri. It's within the $7 million. Theoretically, then, if they pay, the deductible then becomes at issue in the Missouri litigation. Because if the insurer wants to avoid paying the deductible, they're going to raise the deductible dividends, right? Yes. The deductible necessarily had to be decided in the garnishment court action. Okay. Long way around. But, yes, that's what we're getting. Well, to get back to the argument that your opponent is making, which is simply that whatever agreement you had over the homeowners association looking to the insurer for payment does not trump the deductible. I mean, does it trump the judgment? And as a result of the judgment, when they satisfied that judgment, they, in fact, were satisfying a liability that your client had. A liability to the homeowners? Yes. Yes. If they were satisfying a liability that your clients had to the homeowners, then why would not that trigger the settlement provision of the contract? Because they were doing something for your benefit, which was the language the district court, in this case, didn't find that it needed to reach that question. But the whole point of this settlement provision, presumably, is if you've got to pay something for the benefit of the insurer, i.e. deductible, that you should be able to turn around to the insurer and get that money back. I don't believe they paid a settlement for the benefit of the insured at that time. That may be the legal effect of what happened here, but at that point in time, the liability between Greater Missouri Builders, GMB, and the homeowners association had been resolved by resolution of the settlement agreement entered into between those two entities and the payments made in connection with that. And that's the point that they're making, which is that agreement really doesn't affect the fact that there was a judgment in play, and that that judgment actually encompassed an amount of deductibles. And therefore, when they paid that amount of money in the Missouri garnishment, they, in fact, were satisfying a liability of Greater Missouri. I think this all disregards what I think is the bigger issue and what was the heart of the district court's finding, which is the insurance policy itself contemplates settlement of a claim against an insured. The settlement that MidContinent entered into was not a settlement of a claim against the insured. It was a settlement of a claim against MidContinent for its own liability that was due and owing under the policies. Its own liability, which, as you noted, included a judgment that would have included the deductibles. It would have been an amount that was within, had the deductibles included in it, right? Yes, Your Honor, but under the garnishment statute, the right is only to pursue amounts owed by the insurance company, and the insurance company did not owe the deductible. They didn't owe it. I thought you just said that it was a right to pursue that judgment, and if the judgment included more than the policy limits, then it would have meant that they could have pursued the judgment beyond the policy limits. Didn't you just say that? They could pursue it. They couldn't collect it. I mean, you can allege anything you want in a lawsuit, correct? I hope not. Well, but that's part of the, quote, province, right, is to determine what you're entitled to based on the evidence and the law. And in this instance, the plaintiffs, the Homeowners Association, attempted to argue that it was entitled to recover the entire judgment. But that was the issue that necessarily had to be decided in the garnishment court action. What was, what were they entitled to under the policy? Was it nothing as MidContinent claims? Was it the whole amount? Was it something in between? That was an issue for determination in that case, and it necessarily had to be determined, because their only right was to collect amounts in excess of the deductible, not to collect the entire judgment, including the deductible. And in the Missouri garnishment, the court held that all affirmative defenses were resolved. I think I read that. The trial court, yes.  So that would include, I assume, deductible, an assertion of deductibles. Yes, that's my point. Well, I wish I could say this is clear, but it's clearly not. Both under the Missouri law, which is the garnishment statute, the policy itself, it's very clear that the only obligation MidContinent had was for amounts in excess of the deductibles. The judgment, which was entered by the garnishment court, found that MidContinent owed a specific amount. The court determined that. That case went up on appeal twice. The findings of the trial court necessarily merged into that judgment. When that judgment was settled by MidContinent, after the fact, the issue was gone. The issue was already resolved, because that finding was necessarily part of what the court found. And Judge Lungstrom was very clear about that. When the court entered a judgment, it necessarily was a judgment for an amount that did not include deductibles. Thank you for your time. Thank you. Thank you both for your arguments this morning. The case is submitted.